IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

## NICHOLAS WATKINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-16-346      Kyle C. Atkins, Judge**

_____

**No. W2017-01633-CCA-R3-PC**
_____

The Petitioner, Nicholas Watkins, appeals from the Madison County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty pleas were not knowingly and voluntarily entered because of his trial counsel's ineffective assistance. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Joshua B. Dougan (on appeal) and Christie Rushing Hopper (at post-conviction hearing), Jackson, Tennessee, for the appellant, Nicholas Watkins.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Aaron J. Chaplin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

Based upon the record before us, the Petitioner was indicted for two counts of possession with intent to sell 0.5 grams or more of cocaine within a school zone; simple possession of oxycodone and marijuana, both subject to enhancement to felonies based upon the Petitioner's prior convictions; and possession of drug paraphernalia.[1] On December 7, 2015, the Petitioner entered into a plea agreement with the State. The

_____

[1] The Petitioner's indictments and judgment forms were not included in the appellate record.

Petitioner agreed to plead guilty to both charges of possession with intent to sell 0.5 grams or more of cocaine in exchange for the State's agreement to drop the school zone enhancement and dismiss the remaining charges. The agreement also provided that the possession convictions would merge and that the Petitioner would be sentenced as a Range II, multiple offender to fifteen years to be served at thirty-five percent.

At the plea submission hearing, the Petitioner asserted that his guilty pleas were being entered "freely and voluntarily." The Petitioner stipulated that the facts contained in the indictments were "substantially correct." The Petitioner stated that he understood his plea agreement including the fact that he was being sentenced as a Range II, multiple offender "in exchange" for the school zone enhancement being dropped. The Petitioner also stated that he had reviewed his case with trial counsel, that trial counsel had explained the strengths and weaknesses of his case to him, and that trial counsel had "gone over the pros and cons of entering a guilty plea as opposed to going to trial." The Petitioner further stated that he was "[a]bsolutely" satisfied with trial counsel's representation of him. The trial court concluded that the Petitioner's guilty pleas were "freely, voluntarily, and intelligently made" and accepted the plea agreement. The trial court also allowed the Petitioner to delay reporting to serve his sentence until January 4, 2016, so that the Petitioner could spend the holidays with his family.

The Petitioner timely filed a pro se petition for post-conviction relief. Counsel was appointed to represent the Petitioner in this matter, and several amended petitions were filed. The petitions alleged that trial counsel was ineffective for failing to obtain and review with the Petitioner the discovery materials provided by the State. According to the petitions, the Petitioner obtained the discovery materials after he began serving his sentence and learned that the probable cause provided to support the search warrant for his home was that a controlled buy of crack cocaine had occurred "within [seventy-two] hours of the officer obtaining the search warrant." The petitions asserted that the controlled buy never occurred because the Petitioner "never sold a controlled substance from his residence" because "he was a user . . . but not a dealer." The petitions alleged that trial counsel was ineffective for not attempting to determine the identity of the confidential informant who conducted the controlled buy and for not challenging "the validity of the search warrant based on the false statements of the confidential informant."

The Petitioner testified at the post-conviction hearing that his family retained trial counsel after they were unsatisfied with the plea offer that original counsel had received from the State. The Petitioner claimed that he never saw the discovery materials provided by the State prior to his guilty pleas and that trial counsel never reviewed the discovery materials with him. The Petitioner further claimed that he only received the discovery materials from trial counsel after he was incarcerated. The Petitioner asserted

that "[i]t surprised" him when he saw that the affidavit for the search warrant stated that a controlled buy of crack cocaine had been conducted prior to the issuance of the search warrant. The Petitioner claimed that it was impossible for a controlled buy to have been conducted at his residence because he "never sold crack." The Petitioner explained as follows, "I don't sell crack, I smoke it."

Initially, the Petitioner claimed that he was unaware until he received his discovery materials that the police officers had a search warrant for his residence. However, the Petitioner then admitted that the officers showed him the warrant during the search. The Petitioner was unsure if the officers also showed him the supporting affidavit. The Petitioner claimed that the officers told him that they were searching his residence because they had heard that he was "selling crack out of [the] house." The Petitioner testified that he told trial counsel about the officers' explanation for searching his home and that he also told trial counsel that he "never sold crack." The Petitioner noted that his discovery materials contained information on another individual who was arrested at his address about a month before his arrest. The Petitioner claimed that he had not seen this person "in ten years," but suspected that the man might have been the confidential informant because his arrest information was in the discovery materials.

The Petitioner testified that trial counsel advised him to accept the State's plea offer because "they got dope out of [his] house." The Petitioner admitted that trial counsel discussed with him the time in prison he faced if he went to trial. The Petitioner further admitted that he got "lesser time" as a result of his plea agreement with the State. Nonetheless, the Petitioner insisted that he would have gone to trial if he had seen the search warrant's supporting affidavit because, "I don't sell crack." However, the Petitioner admitted that the officers recovered 4.49 grams of crack cocaine and a set of digital scales with cocaine residue on them during the search of his residence. The officers also found $420 in the Petitioner's pocket. The Petitioner admitted that he was unemployed at the time of the search, but claimed that his girlfriend had given him the money to pay bills. The Petitioner further admitted that he was never charged for the controlled buy referenced in the search warrant's affidavit. The Petitioner also admitted that he had stated at the guilty plea submission hearing that he had reviewed his case with trial counsel, but claimed that he actually "did not know what was going on" because he had not seen the affidavit supporting the search warrant.

Trial counsel testified that he had known the Petitioner "probably since he was born" and that he was retained to represent the Petitioner after he was indicted. Trial counsel recalled that he met with the Petitioner or the Petitioner's parents "once or twice a week" while he was representing the Petitioner. Trial counsel testified that he decided to rely on the discovery motion that original counsel had filed rather than file a new motion. Trial counsel recalled that he spoke to original counsel about the case on a few

occasions. Trial counsel believed that original counsel had reviewed the discovery materials provided by the State with the Petitioner and his family, but he did not know that for certain. Trial counsel recalled that the Petitioner and his family "already had a bunch of stuff with them" when he first met with them and that this included a copy of everything "that was part of the discovery [original counsel] had."

Trial counsel testified that he reviewed the case file with the Petitioner and his family and that they "indicated that they" had "gone over the discovery" and "understood all the ins and outs" of the Petitioner's case. Trial counsel recalled that he reviewed the discovery materials and was sure that he saw the affidavit supporting the search warrant in the materials. Trial counsel further recalled that he discussed the discovery materials with the Petitioner along with the "pros and cons of going to trial." However, he did not specifically recall discussing the affidavit with the Petitioner. Trial counsel testified that the discovery materials he sent to the Petitioner after his guilty pleas came "[r]ight out [of] the file that [he had] gotten from [the Petitioner]." Trial counsel admitted that he did not file any motions to challenge the search warrant or attempt to discover the confidential informant's identity. Trial counsel explained that he did not believe such motions were necessary at that point during his plea negotiations with the State.

Trial counsel felt that there "was a substantial likelihood of conviction [if] the case" went to trial. Trial counsel believed that it was the Petitioner's decision to accept the plea agreement. Trial counsel explained that the Petitioner decided to accept the plea agreement "in consultation with his parents and looking at the case as a whole and the likelihood of going to trial and getting more" time.

The Petitioner's father, Kevin Watkins, testified that he never had any paperwork regarding the Petitioner's case and did not take any paperwork to trial counsel. Mr. Watkins admitted that the Petitioner had been released on bond prior to his guilty pleas and that it was possible the Petitioner had the discovery materials and gave them to trial counsel without his knowing about it.

The post-conviction court thereafter entered a written order denying the petition. The post-conviction court did not find the Petitioner's claim that he "never sold crack" to be credible in light of the evidence found during the search of the Petitioner's residence. Instead, the post-conviction court accredited the testimony of trial counsel that the Petitioner "had a copy of his discovery prior to entering his guilty plea[s]" and that trial counsel had "discussed the discovery evidence" with the Petitioner. The post-conviction court concluded that the Petitioner's guilty pleas were knowingly and voluntarily entered. This appeal followed.

**ANALYSIS**

The Petitioner contends that his guilty pleas were not voluntarily and knowingly entered. The Petitioner's arguments on appeal all center on his claim that the controlled buy mentioned in the affidavit supporting the search warrant never happened. The Petitioner asserts that trial counsel failed to "conduct adequate discovery and to disclose the contents of the discovery" with him. The Petitioner further asserts that this prevented him "from making an informed decision about whether to proceed to trial." Likewise, the Petitioner asserts that trial counsel's failure to obtain the identity of the confidential informant and to challenge the "recklessly false statement" about the controlled buy in the affidavit prevented him from "uncover[ing] additional defenses." The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides

a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). However, we note that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

Alfonso C. Camacho v. State, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009).

Here, the Petitioner has failed to prove by clear and convincing evidence his factual allegations. Specifically, his claims that he had not been provided his discovery materials prior to his guilty pleas and that he would have insisted on going to trial had he been aware of the controlled buy described in the search warrant's affidavit. The post-conviction court accredited trial counsel's testimony that original counsel had obtained the discovery materials from the State and provided them to the Petitioner, that the Petitioner gave those materials to trial counsel, that trial counsel reviewed those materials with the Petitioner, and that the documents trial counsel sent to the Petitioner in prison were "[r]ight out [of] the file that [he had] gotten from [the Petitioner]." Furthermore, the post-conviction court did not find the Petitioner's claim that the controlled buy never occurred because he "never sold crack" to be credible in light of the fact that the police recovered 4.49 grams of crack cocaine, a set of digital scales, and a large sum of cash during the search of the Petitioner's residence. The evidence in the record does not preponderate against those findings.

Additionally, the transcript of the guilty plea submission hearing belies the Petitioner's claims. The Petitioner stated that he had reviewed his case with trial counsel, that trial counsel had explained the strengths and weaknesses of his case to him, and that trial counsel had "gone over the pros and cons of entering a guilty plea as opposed to

going to trial." The Petitioner further stated that he was "[a]bsolutely" satisfied with trial counsel's representation of him. Trial counsel was retained because the Petitioner and his family were not satisfied with the plea offer the State had provided to original counsel. Trial counsel was able to negotiate the removal of the school zone enhancement, which would have resulted in a minimum sentence of fifteen years to be served at 100 percent, and the dismissal of the remaining charges, which could have included two additional felonies, in exchange for a total effective sentence of fifteen years to be served at thirty-five percent. As such, the evidence supports the post-conviction court's conclusion that the Petitioner knowingly and voluntarily entered his guilty pleas. Accordingly, we conclude that the post-conviction court did not err in denying the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE